RUSSEL NEWELL, Appellant, v. REUBEN DOTY and JOSEPH DOTY, Respondents.

Where a note was given without any consideration by the defendants and proper indorsers procured, with a view of having the same discounted at the bank, and before the note had a legal inception, an arrangement was made between the plaintiff and the defendants by which plaintiff was to discount such note at seventeen per cent, and such note was left with one of the indorsers thereof, who was to receive the money thereon and deliver the note to the plaintiff, which he did, *held*, that the transaction was usurious and the note void.

The fact that the plaintiff, at the time of discounting such note, withheld seventeen per cent, and at the same time, without the knowledge or consent of defendants, gave his own note for ten per cent of the note discounted, which note never came to the possession of the defendants, and which he never paid, does not change the character of the transaction.

The 149th section of the Code requires the defendant to deny in his answer, only such allegations in the complaint as he intends to controvert.

*It seems* that an exception to the finding of the referee in general terms, as that "the plaintiff excepts to each and every one of the decisions and rulings of the referee against the plaintiff on the trial of this action, severally, separately and distinctively," amounts to nothing.

APPEAL from the judgment of the General Term of the Supreme Court, Eighth District.

The action was upon a promissory note. The defense was usury. The action was referred to a sole referee, who reported as follows:

"That on the 24th day of June, 1857, the defendants, without consideration, and for the purpose of having the same discounted and raising money, made the promissory note mentioned in the complaint, and procured the firm of "Brown Brothers" (a firm composed of James V. Brown, Henry Brown, and Alfred Brown) and I. W. Fassett to indorse the same, for the accommodation of the defendants; and the said defendants had the said note sent to "the Chemung Canal Bank," at Elmira, to be discounted; and the same was returned on or about the first day of July, 1857, not having been discounted; that while said note was gone to Elmira, negotiations were had between plaintiff and defendant Joseph Doty, in regard to the plaintiff's discounting the

same in case it should not be done at Elmira, and plaintiff proposed to discount it, if at all, at the rate of seventeen per cent; that after the return of said note, on or about the first day of July, aforesaid, it was agreed between plaintiff and defendants that the plaintiff would take and discount said note at the rate of seventeen per cent, and that defendants should leave said note with James V. Brown, at the store in Wellsville, and the plaintiff should pay the money to Brown for defendants, and receive the note.

That defendants did leave said note with James V. Brown for the sole and only purpose of receiving the money thereon, and delivered over to plaintiff the note on payment of the money.

That on the next day after such agreement, the plaintiff did pay to James V. Brown, for defendants, the sum of five hundred and twenty-seven dollars and forty-seven cents in cash, being seventeen per cent less than the amount of said note, and at the same time delivered to Brown, his (plaintiff's) note, for the sum of thirteen dollars and seventy-five cents, being ten per cent on the note mentioned in the complaint, and said Brown at the same time delivered to the plaintiff the note set forth in the complaint.

That there had been no previous agreement or conversation between plaintiff and defendants in regard to defendants receiving plaintiff's note, nor any other or different agreement than that they were to receive the amount of the note mentioned in the complaint, less seventeen per cent in cash, and James V. Brown had no authority to receive anything but cash from plaintiff for said note for defendants; that defendants never had any knowledge that said Brown had received the thirteen dollars and seventy-five cent note, until the summer of 1858, and never at any time received said note, or any avails thereof, or any benefit therefrom, or ratified said Brown's act in receiving the same.

That the plaintiff has not paid the thirteen dollars and seventy-five cent note, and it appears to have been lost or mislaid while in said James V. Brown's hands, and there was no proof showing to whom it was payable; that the note

mentioned in the complaint was received and discounted by the plaintiff at a usurious rate, to wit, seventeen per cent, being ten per cent more than lawful interest, and that the defendant never received for said note more than the said sum of five hundred and twenty-seven dollars and forty-seven cents; and that the note given by plaintiff for thirteen dollars and seventy-five cents, being ten per cent on amount of the note in the complaint mentioned, was given as a device to avoid the effect of the statute against the taking of more than lawful interest.

The conclusion of law is, that the plaintiff has no cause of action, and that the note mentioned in the complaint is usurious and void, and that defendants have judgment for costs.

*S. A. Givens*, for the appellant.

I. The action is upon a promissory note, made by defendants, June 24th, 1857, and thereby the defendants, for value received, promise to pay to the order of Brown Brothers, $550, at the People's Bank, N. Y., three months from date; and they delivered the said note to Brown Brothers, who thereupon indorsed it to the plaintiff, who is the lawful owner and holder, and the sum has not been paid, or any part of it.

There is no general or specific denial in the answer, and the above facts alleged in the complaint stand admitted.

The answer does not overcome this plain, legal admission or confession, that plaintiff obtained the note in regular course of business from Brown Brothers, who indorsed it to plaintiff.

The first defense in the answer is no defense. It asserts that before this note had an existence plaintiff usuriously agreed with the Dotys, that plaintiff would lend them $527.47 on three months' credit, and for so doing the Dotys should pay plaintiff $22.53, being more than lawful interest; that plaintiff did, about the 1st of July, lend the Dotys $527.47, and said $22.53 was paid by the Dotys to the plaintiff for forbearance.

There is no assertion or allegation that the transaction detailed in the answer is the same transaction as the note declared upon. It may all be true, and yet afford no defense to the note which the Dotys have by their admissions in pleadings confessed they gave to Brown Brothers a week before, for value received, and which Brown Brothers indorsed to plaintiff, who is the lawful owner and holder. The transaction in the complaint, and that in the first defense in the answer, are obviously different and disconnected. The former is between the Dotys and Brown Brothers, who indorsed the note to plaintiff; the latter is between the Dotys and plaintiff, and not connected with any note whatever.

The second defense is no better. Defendants assert that on the day the note declared on is dated, they made it; and on or about July 1st and before it was discounted, it was corruptly agreed by the plaintiff and the Dotys that plaintiff should lend them the amount of the note, less seventeen per cent, on three months' time, and plaintiff should pay to plaintiff the seventeen per cent, that being more than the lawful interest, and plaintiff did lend to defendants $527.47, and the balance of the note, $22.53, was paid to plaintiff for the loan.

Even though the agreement was made as alleged, still the second defense does not assert that this note ever was discounted for the defendants, and there is no allegation that the loan by plaintiff to defendants was on the note declared upon, or was the same transaction; on the contrary the second defense, by omitting to deny, conclusively admits that plaintiff did not receive the note declared upon from the Dotys; but they delivered it to Brown Brothers, and the latter indorsed it to plaintiff; which admitted facts do not taint the note with usury.

"The answer of the defendant must contain a general or specific denial of each material allegation of the complaint controverted by the defendant." (Code, § 149.)

"Every material allegation of the complaint, not controverted by the answer, as prescribed in § 149, shall for the purposes of the action be taken as true." (Code, § 168.)

A judgment contrary to an admission in the pleadings is erroneous. (*Brige* v. *Paydson*, 5 Sandf. S. C., 217, opinion; *Levy* v. *Bend*, 1 E. D. Smith, 169, last note; *Bacon* v. *Cropsey*, 7 N. Y., 198, opinion; *Walrod* v. *Bennet*, 6 Barb., 144; *Wood* v. *Whitney*, 21 id., 190.)

It is nowhere alleged in the answer that the note declared upon was taken for the money loaned by plaintiff to the Dotys, or that it was in any way the subject of the usurious agreement; while the pleadings amount to a conclusive admission by defendants that the note in question is not usurious.

II. For the reasons stated in our first point the referee erred in not excluding the evidence and pretended defense of the defendants.

The plaintiff's right to recover upon the note was conclusively admitted by the confession arising out of the allegations in the complaint, not denied in the answer, and which the 168th section of the Code declares "shall for the purposes of the action be taken as true." No amendment was asked for or granted.

III. The plaintiff took the note under the assurance and belief that it was business paper in the hands of Brown Brothers, to whom he paid the money.

The note was in Browns' hands, and by them sent to Elmira; it was returned to the Browns; plaintiff received the note of them; they never paid the money over to the Dotys.

This note in fact took the place of a business note before given to the Browns.

At all events the minds of the parties never met upon the real character of the paper, and there is no corrupt or usurious agreement to be implied from receiving more than seven per cent. As plaintiff understood it no usury could exist. He had been in the habit of buying business paper of them, as he did this of the Browns.

IV. The note was not in fact taken by plaintiff at a usurious rate, even if it was accommodation paper.

It would seem that plaintiff became suspicious that the

defendants and the Browns might possibly have a secret intention to fraudulently entrap him into the purchase of the note at a usurious rate, under a belief that it was business paper, and then claim it was accommodation paper; and to protect himself plaintiff gave his note for $13.75 to Brown, from whom he received the note.

This suspicion has proved well founded.

Now, if he had paid Brown the full amount in money, there could have been no usury in any view of the case. If Brown was not the owner of the paper, he was at least the agent of the Dotys to receive the payment of the money.

It would have been the same if he had given Brown a draft, or an order upon a known person of wealth and responsibility, or a note of a neighbor upon which he could call and receive the money.

Equally so was plaintiff's note, who was a man of wealth, and the money could be obtained on presentation for payment, or its collection could be enforced.

The defendants cannot escape from paying this note by saying that their agent did not deliver the note to them, any more than if he had not delivered the $527 to them. They are bound by his acts, and if defendants wish to disaffirm, rescind, or repudiate a part he received, they must disaffirm, rescind, and restore all that he received from the plaintiff; and until they do so they are bound by his acts.

There is not a particle of evidence in the testimony of either of the defendants stating or intimating that they did not know that the $13.75 note was taken by Brown. It cannot be possible that Reuben Doty was ignorant of it, for the money and the papers were lying on the desk when he went in and met the plaintiff coming out, and Brown was ignorant of any usurious agreement, and was told by Reuben that plaintiff would pay the money in on the note. Doty and Brown do not pretend but the small note lay on the desk with the money and computation when Doty came in and saw the money and took away the computation, and neither of defendants have denied a knowledge that the note was received by Brown.

Suppose plaintiff had said to Brown, "That is all the money I have to-night; I will pay you $13.75 in the morning." This would be a binding promise, upon a good consideration, and collectible by action. Here the plaintiff gave a written promise to pay the amount, admitting that value was received, and the note is still outstanding and the plaintiff is liable upon it.

There were no suspicious circumstances connected with the delivery of the small note.

V. If the story of the defendants is true, it is evident that the only allegation they can make against the plaintiff is that he did not take usury of them, as they had agreed with him to do. Although the plaintiff first proposed to buy the note at a shave, yet it seems he doubted the statement of the Dotys that it was a business note, and concluded to pay for it its full value. There is no doubt that they intended to cheat him out of his money, under the plea of usury. They laid their plans for that purpose, but their agent, who did not suspect their design, failed them, by receiving the face of the note. If he had refused to do so, the plaintiff would not have taken it.

It is a case where the defendants have not only failed to prove usury, but where the plaintiff has proved there was none. When Brown came, who was the agent of the defendants to get the money, without instructions or information as to the amount he was to receive — the plaintiff gave him the full amount of the note less the discount. The defendants, or their agent, have his note which they can collect, and until they disaffirm the contract, by giving back to the plaintiff his own note and his money, they must be held liable — held to the consequences of all that was done by Brown.

The defendants should have rescinded the transaction *in toto*, and promptly, if at all. (See Abbott's Digest, vol. 2, pp. 105–108; Nos. 953, 955, 956, 973, 975, 977, and cases there collected.)

VI. Our fourth point demonstrates that the referee erred in rejecting proof of the plaintiff's responsibility. For aught

that appears, the referee decided the case against the plaintiff, on the ground that the small note was not collectible by reason of the plaintiff's poverty, and, therefore, the usurious agreement was not avoided by paying the full amount of the note.

Again, the referee erred in refusing to allow plaintiff to prove why he gave the note instead of paying the money.

The evidence might have relieved the mind of the referee from the conclusion he arrived at, that the small note was given as a device to avoid the statute against usury.

The referee also erred in rejecting evidence at folio 99. Plaintiff had a right to show upon cross-examination, that the assertion that the note was accommodation paper was false, and that in fact it was business paper, and thus avoid the consequences into which the defendants and Brown had sought to entrap him.

This evidence was a proper test to apply to Brown, to elucidate that issue, he being the possessor and apparent owner of the note. This was competent evidence, especially after it had been proved that Brown never before had indorsed a note for defendants, and that Brown never handed over the proceeds of the note to defendants. (*Holmes* v. *Williams*, 10 Paige, 336; *Chamberlain* v. *Townsend*, 26 Barb., 611.)

Justice requires (we think) that the report of the referee and the judgment therein be set aside, and a new trial granted, and that the order of reference be vacated.

*M. Stevens*, for the respondents.

I. The exceptions of the plaintiff to the decisions and report of the referee do not point out any particular error, and are not sufficiently specific to raise or present any question to this court for review. (*Hunt* v. *Bloomer*, 3 Kern., 341.)

II. The finding of the referee on questions of fact, and his conclusions of law, are not contained in the case and cannot be reviewed. (*Otis* v. *Spencer*, 16 N. Y., 465; *Johnson* v. *Wherlock*, 3 Kern., 344; *Hunt* v. *Bloomer*, id., 341.)

III. The answer set up the usurious agreement, and the discount of the note in pursuance thereof, and is sufficient to apprise the plaintiff of the defense which was made. (5 Sandf., 557; *Allen* v. *Patterson*, 3 Seld., 476.)

IV. What was said by the defendants to their agent, being the authority on which he acted, was a part of the *res gestœ* and admissible for the purpose of showing what he was authorized to do. (Cowen & Hill's Notes to Phil. Ev., 588; *Story* v. *Strettel*, 1 Dal., 10.)

V. The offer of the plaintiff to show why he did not have the $13.75, or pay it instead of giving the small note, was objectionable, for the reason stated, but if it was material, the witness reiterated as an answer to the same question, what he had stated, and the exception was thereby waived. (*Miller* v. *Starks*, 13 Johns., 517; *Rich* v. *Rich*, 16 Wend., 663; *Morris* v. *Badger et al.*, 6 Cow., 449; *Hayden* v. *Palmer*, 2 Hill, 205.)

VI. An usurious agreement between the parties was clearly proven, the plaintiff's figuring at 17 per cent, made by plaintiff, found by Reuben Doty on the desk with the money, and to constitute a defense it is not necessary to allege or prove the actual taking of more than seven per cent. (2 R. S., 4th ed., 182; *Hammond* v. *Hopping*, 13 Wend., 505; 3 Halst., 233; *Clark* v. *Badgely*, 9 Cow., 65.)

VII. To purge an usurious agreement it must be mutually rescinded by the parties who made it, and nothing was said by any of the parties upon the subject of rescinding the usurious agreement in this case. All the authority Brown had as agent for the defendants was to hand the note to plaintiff and receive the money on it. (*Hammond* v. *Hopping*, 13 Wend., 505.)

VIII. The defendants were not stopped from setting up the defense of usury in this case, admitting the testimony of Newell to be true as to the consideration of the note, for the reason that the plaintiff purchased the note of the makers, and had notice of the facts. (*Dezell* v. *Odell*, 3 Hill, 215.)

IX. The errors in rejecting or receiving evidence, if any there were on the trial, were such as could not possibly

change the result or injure the plaintiff, and for that reason are not cause for granting a new trial. (*Hayden* v. *Palmer*, 2 Hill, 205; *People* v. *Wiley*, 3 id., 194; *Beebe* v. *Bull*, 12 Wend., 504.)

X. The questions of fact are correctly found by the referee. The fact that the small note was made after the usurious agreement for the exact amount of the usury agreed to be paid, without the knowledge of the defendants, and that defendants never had possession of it, or any knowledge of it, until the summer of 1858, and that it was lost, and was never paid or presented for payment, and the plaintiff did not offer to pay it, until after the defense of usury was set up, and that it was not shown to be payable to the defendants, is strong evidence that it was given as a cover for usury.

Judgment was entered upon this report for the defendants, which was affirmed at the General Term, from which an appeal is brought to this court.

POTTER, J. There is nothing in the plaintiff's point, that because the defendants did not deny the allegations in the complaint, of the making of the note, and delivering it to Brown Brothers, the payees who indorsed it to the plaintiff; and because they made no general or specific denial of any allegation in the complaint, that this is such an admission of the cause of action, that a judgment contrary to the admission is erroneous. The 149th section of the Code requires such a denial only, of the matters alleged, as the defendant means to controvert. The defendants could not truthfully controvert or deny those allegations; and there is no such unreasonable provision in the Code as to require the party to answer a pleading with a falsehood. The 150th section allows the defendant to set forth as many defenses as he may have. Usury is a good legal defense, and it may be interposed without denying the contract set up. It is much more commonly done by admitting the contract declared upon, and then alleging that it was corruptly made. This was sufficiently done in the second answer in this case. At all events,

it is sufficient in form, after judgment, upon the report of the referee, upon the facts found by him.

It is not in accordance with the practice of this court to review exceptions to the report of a referee expressed in such general terms as those in this case. They point to no specific error, but seem to proceed upon a kind of chance experiment, upon the theory, that not being able at the time to point out a specific objection, they may at some future day be able to discover one which can be introduced under a general objection, or, perhaps, and more probably, in the indulgence of a hope that the court of review may be able to find an objection for them.

The decisions of the referee made on the trial, and there excepted to, are specific; they can and will, of course, be reviewed, but the exceptions filed after the report, stating in general terms that " the plaintiff excepts to each and every one of the decisions and rulings of the referee against the plaintiff on the trial of this action, severally, separately and distinctively," amount to nothing, and cannot be reviewed. So, too, the exception that " the plaintiff excepts to each and every one of the referee's findings of fact, severally, separately and distinctively, found and stated in his report, and alleges that his findings on each and every one of the questions of fact submitted by him is unsupported by and contrary to the evidence," points to no specific error, and such exception is entirely useless verbiage, if inserted in a case. If it calls upon this court to perform any duty in regard to it, it is to try the case over, upon the facts, like a case in equity upon pleadings and proofs. This court are called upon to perform no such duty. This has been so often repeated in their adjudications that at this day it amounts to a reflection upon the qualification of counsel who comes here to ask relief upon a case so unskillfully prepared and presented. (*Jones* v. *Osgood*, 2 Seld., 233; *Caldwell* v. *Murphy*, 1 Kern., 416; *Dunkel* v. *Wiles*, id., 420; *Lansing* v. *Wiswall*, 5 Denio, 213.)

We proceed, then, to review the exceptions taken to the rulings of the referee on the trial.

When the defendant offered evidence in support of his

defense of usury, it was objected by the plaintiff, that, having admitted the cause of action, no legal defense had been set up. This objection, as we have already held, was not good, and was correctly overruled by the referee.

When the plaintiff advanced the money to "Brown Brothers" for the note in suit, he lacked a trifling amount, to wit, $13.75, for which amount he gave Brown Brothers a note. This note Brown Brothers lost, or mislaid, and the name of the payee therein, and the time when payable, or how payable, could not be recollected—it had never been delivered to defendants, nor had they been informed by Brown Brothers of its existence, and the referee finds the giving of this note was a mere device to avoid the statute. The plaintiff offered to prove that the plaintiff, the maker of the note, was responsible. The evidence was objected to by defendants, and excluded by the referee. There were dealings between Brown Brothers and defendants, and whether Brown Brothers accepted this note from plaintiff as evidence of cash loaned to plaintiff, or how otherwise, does not appear, and it is entirely immaterial, as it did not change the character of the contract; the defendants are not shown to have any connection with it, and whether the plaintiff was able to pay it or not was not material, and the exclusion of the evidence was not error.

There was evidence in the case that Brown Brothers had a former note of the defendants, exceeding $700, then about becoming due, which they had negotiated in New York, and that the avails of the note in suit were, in part, to be applied to take up the larger one. One of the firm of Brown Brothers was a witness, and had testified at some length, giving details of their action and agency in the negotiation of the note in suit. The plaintiff, on cross-examination of Brown, asked him, "Would you have indorsed this note if you had not had their note and negotiated it?" The defendant objected to this as immaterial, and that it called for the operation of the mind of the witness, and not for facts, and the referee sustained the objection. I am not able to see any error in this ruling.

This completes the review of the objections taken on the trial. In carefully looking at the whole case, the report of

the referee can be sustained upon the evidence in each of his findings of fact. This being assumed to be true, the conclusion of law is right. If the plaintiff knew, as the evidence justifies the conclusion, that he was discounting this note, and not buying a previously negotiated business note, it presents a shameless case of the violation of the statute concerning usury. The judgment is right, and should be affirmed.