JOHN E. STONE, Respondent, *v.* THE WESTERN TRANS-
PORTATION COMPANY, Appellants.

*Master and servant—Negligence.*

The master is liable for damages occasioned by the negligence of his servant
in performing the duties imposed upon him by the terms of his employment.

Where Defendants had hired Plaintiff to keep for them horses by the week,
Defendants furnishing a servant to take charge of the horses; and the said
servant, in taking care of the same, conducted so negligently, that he caused
Plaintiff's barn and contents to be burned: *Held*—Defendants were liable.

*John Hubbell* for Appellant.

*C. Carskaddan* for Respondent.

MASON, J.—This action was brought to recover the value of a
quantity of hay and oats, some wagons, harnesses, farming uten-
sils, &c. This property, at the time it was destroyed by fire, was
in a barn in the possession of the Plaintiff, in which a number of
horses belonging to the Defendant were being wintered, under a
written contract between the Plaintiff and the Defendant, in which
the Plaintiff agreed to keep twenty horses for the Defendant
through the winter, and to furnish and supply said horses with
good and commodious stables and yard room, and to furnish an
abundance of hay for food, and salt for the use of the horses, and
to furnish sufficient straw for bedding, and to keep constantly a
sufficient supply of water conveniently situated for the use of
said horses, and to furnish lamps, oil, and all tools which may be
requisite or necessary in grooming or taking care of said horses,
and to furnish a man and team to assist in leading the said horses
to the tow-path of the Erie Canal in the spring, or when said
horses may be required by said Company. The Plaintiff also
agreed to board a man for the said Defendant, at two dollars per
week, in case the Defendant may require a man to take care of
said horses. I think it pretty clear, taking this contract as a

whole, that it contemplated the Defendants should furnish a man to take care of the horses.

It is true the Plaintiff agreed to keep these horses for ninety cents per week for each horse. But here are the positive undertakings specifically provided: to furnish hay for food and straw for bedding, and such quantities of salt as may from time to time be required for the use of said horses, and lamps, oil, and tools which may be requisite or necessary in grooming or taking care of said horses, and to keep constantly a good and sufficient supply of water conveniently situated for the use of said horses.

There is no agreement to furnish a man to feed and groom the horses, but there is an agreement to board the Defendants' man for two dollars per week, if the Defendants should require it. And there is also an agreement to furnish a man and team to assist in sending the horses to the Canal in the spring. The parties contemplated that the Defendants would furnish a man to feed and take care of the horses. Be this as it may, however, the contract gave the Defendants this right, to put the horses in charge of their own man to feed and groom, and the Plaintiff agreed to board him for two dollars per week. This man must be deemed the servant of the Defendants, and not of the Plaintiff.

The Defendants admitted the existence of their Corporation, by merely denying the allegations of the complaint in their answer. It was decided in the case of The Bank of Genesee *v.* The Patchin Bank, that the provisions of the Revised Statutes, dispensing with proof in such case, was not repealed by the Code. ( 3 Kern. 309.) If there were any doubt on this subject it is removed by chapter 422 of the Laws of 1864, which provides that, in suits brought by or against a Corporation, created by or under the laws of this State, it shall not be necessary to prove, on the trial of the cause, the existence of such Corporation, unless the Defendant shall have alleged, in the answer in the action, that the Plaintiffs (or Defendants, as the case may be) are not a Corporation. (Laws of 1864, p. 1007, § 3.) The exceptions, therefore, taken by the Defendants to the evidence given by the Plaintiff, to prove the Defendants a Corporation, are wholly unavailing, if well taken.

The charge of the Judge is wholly unexceptionable. The Defendants have no such exceptions taken as can subject the charge to review here. The charge embraces all the points and proposi tions in the case, and at the close the case states that the Defendants except to each proposition of the charge, excepting that in reference to the Plaintiff's contributing to the injury. Where the charge of the Court contains several propositions, and as to some of them it is unobjectionable, an exception taken to each and every part of the charge presented no questions for review on a bill of exceptions. (Caldwell *v.* Murphy, 1 Kern. 416; Jones *v.* Osgood, 2 Seld. 233; Newell *v.* Doty, 33 N. Y. 83.)

The only remaining question in the case arises on the Defendants' motion for a nonsuit, and which was properly overruled by the Court. The Defendant stated seven grounds of motion for a nonsuit. The first is, that the incorporation of the Company is not proved. The answer to this has already been given: the fact stands admitted by the Defendants' answer, and besides it was fully proved.

The second is, that there is no evidence of authority from the Company to make the contract. This objection is a good one, if true.

The contract was made in behalf of the Defendants by Jacob Coom, who was at the time in the employ of the Defendants, and who swears that he executed the contract by direction of J. R. Chipps, and that Kelsey, who was the Defendants' general superintendent, wrote him that he had engaged Chipps as his assistant, and Kelsey swears that he had hired Chipps as his assistant; and when to this is added the fact that the Defendants sent their horses to the Plaintiff to keep, under the contract, and that he had actually kept them three or four weeks when the fire occurred, there certainly was evidence for the jury sufficient to submit the case to them.

The third ground is, that there was no evidence that Brophy was an agent or in the employ of the Defendants. Brophy swears he was in the employ of the Defendants at Syracuse, taking care of horses in stables there, and had been three or four months, and that he went with these horses to the Plaintiff, to take care of them, by the direction of Baker, who kept a station at Rochester.

James Clarke swears that he resides in Syracuse, and was in the employ of the Defendants, and was station agent at Syracuse, and that Brophy was in the employ of the Company; and that Baker came there in the night to get the horses off the Canal, and said that Brophy was going to Oneida with the horses, and he says that he had told Kelsey that Brophy would be a good man to winter the horses.

Now, Kelsey swears that he had sent Baker down to lead the horses to winter quarters, and that it would be his business to get a man such as he pointed out to him to take care of them, and he says that he has not any doubt but that he recommended this Brophy to Baker, and he swears that Brophy was recommended to him by Clarke, and he states further that he supposed Baker put him into this stable. This, certainly, was quite sufficient to submit this question of Brophy's employment to the jury.

The fourth ground is, that, upon the evidence in the case, the Defendants were not liable. This was clearly a question for the jury. If this hay and barn were set on fire by the negligence of the Defendants' servant, of which there can be no doubt upon the evidence, I take it to be very clear that the Defendants are liable while the rule remains that the master is responsible for the negligence of his servant. The position assumed by the Defendants' counsel, in his argument here, that Brophy is not to be deemed the servant of the Defendants, cannot be sustained, and besides, the jury have found that fact against the Defendants.

There is nothing in the contract which places Brophy under the dominion and control of the Plaintiff. On the contrary, the contract is cautiously drawn to avoid any such thing. The Plaintiff agrees to furnish hay for food, straw for bedding, a convenient supply of water at all times, to furnish lamps, oil, and all tools which may be necessary in grooming and taking care of the horses, etc. It is apparent from the contract that the Defendants preferred to place the charge and control of the horses, and their feed and water, grooming, etc., in the hands of their own man, and they did so, and must be held responsible for his negligence.

The fifth ground is, that there is no evidence of negligence on

the part of the Defendants. The Defendants are liable for the negligence of their servants, and the evidence is very clear that Brophy, the Defendants' servant, was negligent. He went into the barn with a glass lantern, filled with kerosene oil, and took it upon the hay-loft, and carelessly placed it upon a beam, to which the hay nearly or quite approached, and probably, as he confesses, knocked it off with the pitchfork, and set the hay and barn on fire; and the negligence was clearly proved.

The sixth ground of objection is, that the negligence on the part of the Plaintiff, in furnishing a kerosene lamp, contributed to this injury. The Plaintiff directed Brophy to hang the lamp upon a peg on the lower floor, but instead of that he took it upon the hay-loft. The contract required the Plaintiff to furnish such a lantern, and also to furnish oil. This may be construed to mean kerosene oil, as this article is now more in common use in such lanterns than any other oil. At any rate, it can hardly be charged as an act of negligence to furnish an article now in so common use, as most of the lanterns in use are constructed for using such oil. Had Brophy hung this lantern on the peg, provided for that purpose by the Plaintiff, this fire never would have occurred; and but for his gross negligence in carrying it upon the hay-loft, this action never would have been brought. This answers the seventh and last point raised on the Defendants' motion for a nonsuit, which is, that the evidence shows that this fire was the result of an accident. The fire was the result of Brophy's gross negligence.

The cause was properly submitted to the jury, and the judgment should be affirmed.