HENRY A. CASSEBEER and J. OTTO TOUSSAINT, Executors, etc., of WILLIAM RUHL, Deceased, Appellants, *v.* FREDERICK W. KALBFLEISCH, Respondent.

*Accommodation indorser — payment by, of note usuriously discounted — right to recover against maker.*

One Ruhl indorsed a note made by one Kalbfleisch for the accommodation of the latter, by whom the same was discounted at a usurious rate of interest. Upon the maturity of the note Ruhl paid the same in ignorance of its invalidity, and subsequently Kalbfleisch made and delivered to him another note in place thereof. In an action upon the latter note, *held,* that the usurious discount of the first note constituted no defense thereto.

An accommodation indorser of a note who takes up the same at maturity, in ignorance of the fact that it has been discounted at a usurious rate of interest, may maintain an action thereon against the maker thereof.

APPEAL from a judgment in favor of the defendant entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the judge before whom the action was tried.

*F. C. Cantine*, for the appellants.

*Lucien Birdseye*, for the respondent.

DANIELS, J.:

This action was brought upon two promissory notes made by the defendant to the order of William Ruhl, and claimed by the defendant to have been void for usury. After its commencement, the complaint was amended by adding two other notes of the same description. But the evidence concerning them was stricken out by the court, because they matured on the day when the summons was served. The trial accordingly involved the liability of the defendant only upon the two notes originally set out in the complaint. The first of these was dated on the 29th day of June, 1874, payable in four months from that time at the Tradesmen's National Bank. That was indorsed by Ruhl, the testator; and the evidence tended to show that it was made and indorsed for the accommodation of the Empire Sewing Machine Company, with which the indorser was in no way connected, but of which the defendant was president. It also tended to show the discount to have been made of it at a usurious rate of interest. The other note was dated on the 1st of July, 1874, and became due in three months after its date, and was payable at the same bank as the other. The evidence showed that the last note was delivered to Ruhl in exchange for a similar preceding note made by the defendant, and indorsed by himself, which had also been discounted at a usurious rate of interest. The notes were signed in blank by the defendant and placed in the hands of the secretary and treasurer of the sewing machine company, to be used for its benefit. And he filled them out and procured the first to be indorsed by Ruhl,

and afterwards discounted for the company. The other did not pass out of Ruhl's hands, but was held by him in place of the note which he surrendered for it, which was probably discounted and used in the same manner as the note of the twenty-ninth of June, for the accommodation of the company. Upon all the notes which were used in that manner, and they were shown to have been numerous, the defendant was maker and Ruhl indorser for the use and benefit of the company, and for that reason the sale of them by the company at a greater rate of discount than seven per cent rendered them usurious in the hands of the holder. That was their first delivery or inception as commercial paper, and for that reason the notes could not lawfully be transferred to the lender of the money at a greater rate of interest than after the rate of seven per cent per annum. (*Catlin* v. *Gunter*, 1 Kern., 368.) In that respect they differ from what is known as business paper, or bills and notes arising out of or predicated upon real transactions. (*Williams* v. *Storm*, 2 Duer, 52; *Dowe* v. *Schutt*, 2 Den., 621; *Newell* v. *Doty*, 33 N. Y., 83.)

But the evidence did not show that Ruhl was in any manner connected with the usurious disposition of any of the notes. It directly showed the contrary — that the discounts were procured solely by the secretary and treasurer of the company. It also appeared that the notes which had been discounted were taken up by Ruhl on account of his relation to them as their indorser; and there was nothing disclosed in the course of the trial from which it could be inferred that he knew or understood that either of them had been sold at a usurious rate of discount or interest. The only conclusion upon this subject which the evidence warranted was, that the notes were taken up by him in good faith, and under the belief that he was legally liable upon them. And if that was the case, then he was entitled to recover upon the note of July 1, 1874, because it had been delivered to him in exchange for a preceding note which he had in that manner acquired. As to the substituted note, no defense appears to have been made out. The facts were all proved by the defendant's witness, and they were not contradicted. And the court was requested to hold that a recovery should be had on that note, but the request was declined, and the plaintiff's counsel excepted. That, according to the case of *Kent* v.

*Walton* (7 Wend., 257) was erroneous. It was there held, concerning a transaction similar in principle to this one, that " although it had been shown that the first note was tainted with usury, and therefore void in the hands of the Franklin Bank, who had paid value for it without notice of the usury, yet the giving of a new security to an innocent holder for valuable consideration constitutes a new transaction, and the usury of the first note does not affect the second." (Id., 258.) And that was shown to have been in accordance with the opinions of the chancellor and COLDEN, senator, in the case of *Powell* v. *Waters* (8 Cow., 669).

At the close of the case, the learned justice presiding at the trial was requested to instruct the jury " that if Ruhl indorsed either of these notes at the request of Kalbfleisch, and the note was subsequently° discounted at an usurious rate, and he took it up, the defense of usury is not available against him ; in other words, he was surety, and was not bound to plead the defense of usury unless, perhaps, he was specially required to do so by Kalbfleisch." This was also declined, and the counsel for the plaintiff excepted. The evidence which had been given did tend very directly to show that Ruhl indorsed the notes at the request of the defendant ; and no point had in any form been made that Ruhl had taken up either of them when he had reason to believe that it had been usuriously discounted. In fact, there was no evidence in the case sustaining that view ; for that reason, this request was equivalent to asking the court to hold that if Ruhl, as the defendant's surety, had taken up either of the notes without notice that it had been discounted at a usurious rate of interest, he was entitled to recover against the defendant. The form of the request was somewhat defective, and open to criticism ; but it was probably understood, in view of the evidence, as simply embodying the proposition which has already been stated, and the defendant's counsel has so discussed it. Construing the request in that form, as, under the circumstances, it was probably understood at the trial, it ought to have been charged by the court ; for a surety who, without either knowing or having reason to believe that any defense exists against the obligation undertaken by him at the request of another, has in good faith discharged it by payment, may legally resort to his immediate principal for reimbursement. (Burge on Suretyship, 367, 368.) And

the fact that it may, without his knowledge or authority, have been discounted at a usurious rate of interest will not exclude it from the operation of this rule. (*Robinson* v. *May*, Croke's Eliz., 588; *Button* v. *Downham*, id., 643 ; *Parker* v. *Rochester*, 4 Johns. Ch., 329.) In 1868, this question was before the General Term of the Superior Court of Buffalo ; and it was held that "usury in the inception of a note is no defense to the maker in an action against him of the accommodation payee and indorser, who took it up after protest without notice of the usury."

Taking up such paper, by a party apparently liable to do so, as its indorser, is a very different thing from succeeding to the title of the usurious holder by its purchase. It is the performance of the contract made by its indorser at the instance of the maker. And in doing it he is not bound to suspect that an illegal use was made of the paper indorsed by him. He may act upon the presumption, which the law sustains, that its injunctions have not been violated, unless something has occurred to awaken his suspicions that the fact is otherwise. And when that has been done in good faith, the legal rules applicable to the case of a mere surety, as Ruhl was shown to have been by the evidence (*Pitts* v. *Congdon*, 2 Comst., 352, 354) entitle him to indemnity from his principal. (1 Parsons on Bills, etc., 243, 244.)

Other objections were urged during the progress of the trial which have been relied upon as supporting the appeal, but as those already considered were well founded, these do not require to be considered.

The judgment and order should be reversed, and a new trial directed, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order reversed; new trial directed, costs to abide event.