UTICA,
Aug. 1828.

Murray
v.
Bethune.

</div>

---

### I. B. & J. B. Murray *vs.* J. Bethune, Executrix of D. Bethune, deceased.

THIS was an action of assumpsit, tried at the New-York circuit, in January, 1827, before the Hon. Ogden Edwards, one of the circuit judges. The plaintiffs claimed to recover of the defendant a contributory share of an advance alleged to have been made by them to John R. Wheaton, under an instrument in the following words: "We, the undersigned, do severally and not jointly, hereby agree to guarantee and be accountable for the repayment of all such sum or sums of money, not exceeding in the whole the amount respectively affixed to our names, which may be *lent and advanced* by any person or persons, corporation or corporations, to John R. Wheaton, or *paid for his use,* or by his order or directions, at any time within two years from the date hereof, provided the said John R. Wheaton shall be unable to pay the same, or for such part thereof as he may be unable to pay: but it is expressly agreed and understood, that should any *deficit* arise on the part of John R. Wheaton, that each subscriber is answerable for no more or larger share of the sum which he hereby guarantees, than shall be his proportion of the said

*Any act or declaration of a party connected with the subject of an agreement, whether prior or subsequent thereto, may be given in evidence to shew what the agreement was; but the mere impression or understanding of one of the parties not communicated to the other cannot be given in evidence, because it will not justify the inference that the understanding of the other party was the same, and to constitute a contract or agreement, the assent of both parties is requisite. Where money is paid into court, it is a payment pro tanto; the plaintiff has a right to take it out, the defendant has not. The subsequent death of the defendant, and the revival of the action against his administrator, or the commencement of a new suit, does not change the effect of the payment.*

*deficit,* compared with the whole sum subscribed, hereby guaranteed.    And it is further stipulated, that should not any demand be made on the subscribers, in consequence of the non-fulfilment of any engagement on the part of John R. Wheaton, for which they are hereby made accountable, prior to the expiration of the said term of two years, then this guaranty and our responsibility to cease thereafter.    New-York, June 20th, 1818."    The instrument was produced with the names of a number of persons subscribed to it ; amongst others, the name of John B. Murray, with the sum of $1000 set opposite to it, and the name of Divie Bethune (the testator) with the sum of $500 set opposite.

John R. Wheaton testified, that in October, 1818, James B. Murray, one of the plaintiffs, applied to him to purchase a quantity of rum at a limited price to meet an order from the eastward.  Witness reported that he could make a purchase at 9s. 4d. per gallon.    The price exceeded the limit, which was 9s. per gallon, and the plaintiffs declined taking it.    Witness told Murray, that if his correspondent did not choose to take the rum at that price, he, the witness, would be glad to take it himself.    On the next day Murray told him he might make the purchase.    Witness, thereupon, bought the rum, 59 hhds. at 9s. 4d. for the notes of the plaintiffs at four months.    A few days afterwards, Murray told witness that his correspondent declined taking the rum.    Witness replied, " very well, I will look about and see what I can do with it."    Witness further said, he should expect they would extend the time, and he would give his notes at six months. Witness afterwards took an order for the rum. . The plaintiffs made a statement of the amount for which witness was to give his notes, including the first cost, the interest, and a commission of one and a quarter per cent.    Witness gave his notes to the plaintiffs at six months, and handed the same over to them, together with the guaranty endorsed in blank by witness.    When he was directed by Murray to make the purchase, nothing was said about the guaranty.    Witness had frequently desired Murray to make purchases for him on the faith of the guaranty, which he had declined to do.    Murray knew that the guaranty was all the property he had.    It

was always understood that witness was to allow a commission to the plaintiffs, if they purchased for him. The witness was asked by the plaintiffs' counsel, "whether it was his understanding at the time, when he first proposed and agreed to take the rum, if the eastern correspondent should not, that in that event the guaranty should be given to the plaintiffs as their security for the repayment of the amount of their notes." This question was objected to by the defendant's counsel and overruled; but his honor, the judge, decided that the plaintiffs might go into proof of any thing either said or done, both before and after the agreement in question, in order to lay a foundation for the inference of the jury as to the understanding of the parties. The counsel of the plaintiff excepted to this opinion. It further appeared that the rum sold at a loss, that the notes of the witness were renewed from time to time, that the witness was unable to pay the amount, that notice of the plaintiffs' claim had been given to the testator on the 19th June, 1820, and a demand made of payment.

The plaintiffs then stated certain other advances made by them to Wheaton upon the faith of the guaranty, the testator's proportion of which, according to the amount subscribed by him, and interest, was $82, which was admitted to be correct by the defendant, but it was alleged that the amount had been paid into court by the testator in his lifetime, in a previous suit brought against him by the plaintiffs, for the same cause of action, and had never been taken out of court, which suit abated by the death of the testator. This statement was admitted by the plaintiffs' counsel to be correct; but he objected that the defendant could not avail himself of that payment in defence of this action. His honor, the judge, overruled the objection, and the plaintiff excepted to this decision also. The cause was submitted to the jury, who found a verdict for the defendant. A case was made to found an application for a new trial.

*R. Sedgwick*, for plaintiffs. The judge erred in excluding the question put to the witness, as to his understanding that the guaranty was to be given to the plaintiffs as their security. In certain cases, a party is confined to specific testimo-

ny, as in the proof of a sealed instrument, the subscribing witness must be produced. So under the statute of frauds, evidence of a peculiar character is required; but when parol testimony is admissible, what shall and what shall not be evidence, depends upon the circumstances of each case. The wit of man cannot confine it within certain specified general rules. If the evidence is positive, well; if not, presumptive proof may be resorted to, when the fact is to be inferred from circumstances which either necessarily or usually attend such facts. If the circumstantial evidence be such as may afford a fair and reasonable presumption of the facts to be tried, it is to be received and left to the consideration of the jury, to whom alone it belongs to determine upon the precise force and effect of the circumstances proved, and whether they are sufficiently satisfactory and convincing, to warrant them in finding the fact in issue. The inquiry of the witness was not as to matter of opinion, but matter of fact. He had previously desired the plaintiffs to make purchases for him on the faith of the guaranty. It is a fair and reasonable presumption, that in this transaction it was understood by the parties, that the guaranty was to be delivered to the plaintiffs, though nothing was said at the time as to the assignment of the guaranty. It is not to be believed, that the plaintiffs trusted Wheaton on his own account, they knowing his circumstances, one of them having signed his letter of credit. In the case of *McKee* v. *Nelson*, (4 *Cowen*, 356,) the witnesses were allowed to give their opinion as to a fact in aggravation of damages, the court saying there were exceptions to the general rules of evidence. That was an action for breach of promise of marriage; but is there a rule of law peculiar to the tender passion, or will the same principles apply in every other case? As to the doctrine of presumptive evidence founded on circumstances in connection with former transactions, the counsel cited 1 *Starkie's Ev.* 23.

Suppose Wheaton, instead of transferring the guaranty to the plaintiffs, had refused to do so, and the plaintiffs had filed a bill in chancery to compel such transfer, charging that it was the understanding of the parties, that such transfer should be made, and requiring Wheaton to answer to such charge; would he not have been compelled to answer, and

had he answered in the affirmative, would not a decree have followed of course?

At all events, the plaintiffs were entitled to a verdict for the sum admitted, viz. $82. The money was not paid into court in this cause; it was paid in, in a suit which had abated by the death of the testator.

*G. Griffin,* for defendant. The money paid into court in the first suit, enures to the benefit of the defendant in this suit. By the payment, the plaintiffs became the owners of the money, and might draw it out at their pleasure. This point is expressly adjudicated in *Barnes' Notes,* 279.

As to the rejection of the evidence. The understanding and opinion of witnesses is not permitted to be given in evidence, except in matter of science; and the reason is, that a witness would not be answerable in case of perjury: it would be impossible to convict him of having falsified the truth. A witness is allowed to state the substance of a conversation or agreement; but he is never permitted to state his understanding, or the conclusion he has drawn from facts.

The object of the inquiry was to shew a contract between the witness and the plaintiffs, in relation to the security which the plaintiffs were to receive for having given their notes. A contract is the meeting of the minds of the contracting parties, on the subject matter of negotiation. The understanding of one party not communicated to or concurred in by the other party, can have no binding effect.

The counsel here was stopped by Sutherland, J. who observed that he had never understood that a witness might state his understanding or opinion, without shewing the facts or circumstances on which the same were founded, from which the jury might draw their inferences. There may be exceptions, such as the case in *Cowen,* which has been referred to.

*R. Sedgwick,* in reply. The learned and venerated T. A. Emmet agreed in opinion with the counsel for the plaintiff, that the judge at the circuit had erred, and advised the application for a new trial. The witness had frequently applied to the plaintiffs to make purchases for him on the faith of the

guaranty. If, in addition to that testimony, he had stated that at the time of the negotiation between him and the plaintiffs, it was his understanding that the plaintiffs were to have the guaranty as their security, the jury would not have hesitated to have found a verdict in their favor. No facts ought to be excluded, which form a reasonable ground of inference for the conclusions of a jury. In a case of conspiracy against twenty, after proof of conspiracy, evidence of facts against fifteen will convict the whole.

*By the Court*, SUTHERLAND, J. A new trial is moved for on two grounds: 1. That the judge ought to have permitted John R. Wheaton, a witness for the plaintiffs, to testify as to his understanding of the agreement between him and the plaintiffs; 2. That the plaintiffs were at all events entitled to a verdict for the amount which was admitted to be due, and from which the defendant claimed to have been discharged by the payment of money into court by the testator.

*As to the first point*, the judge decided that the plaintiffs might go into proof of any thing either said or done, either before or after the agreement in question, in order to lay a foundation for the inference of the jury as to the understanding of the parties; but that the mere understanding of one of the parties to the agreement, without such understanding having been communicated or assented to by the other party, could not be given in evidence in order to make out the contract or agreement between them.

I understand the rule to be as laid down by the judge. Any act or declaration of either party connected with the transaction, whether prior or subsequent thereto, may be given in evidence in order to shew what the agreement was. A fact is then proved, from which a jury may infer the understanding or intention of the parties; but the mere impression or understanding of one of the parties, not communicated to the other, can never justify the inference, that the understanding of the other party was the same, and in order to constitute a contract or agreement, the assent of both parties is requisite. It would be a most dangerous relaxation of the rules of evidence. There would be no possibility of con-

victing a witness of perjury, on the ground of such evidence. His understanding of a transaction, if it may be called a fact, is one resting entirely in his own mind, and which cannot be disproved. There is nothing peculiar in this case, to take it out of the general rules of evidence. The case of *McKee* v. *Nelson,* (4 *Cowen*, 355,) is an exception to the general rule. That was an action for breach of promise of marriage, and the question which was allowed to be asked the witnesses was, whether living in the same house, and constantly associating with the plaintiff as a member of the family, and from an attentive observance of her whole deportment during the courtship, it was their opinion or not that the plaintiff was sincerely attached to the defendant. The point there to be ascertained was the state of the plaintiff's affections, and the court remark, "We do not see how the various facts upon which an opinion of the plaintiff's attachment must be grounded, are capable of specification, so as to leave it like ordinary facts as a matter of inference to the jury. It is true as a general rule, that witnesses are not allowed to give their opinion to a jury, but there are exceptions, and we think this is one of them." Upon this point, therefore, the judge decided correctly.

I presume from the statement in the case, that it was conceded that the amount which, under the second point, the plaintiffs contend they were at all events entitled to recover, had been regularly paid into court by the testator in a former suit, commenced against him by the same plaintiff, for the same cause of action. If so, it was a payment *pro tanto.* The plaintiff had a right to take it out of court, and the defendant had not; and I apprehend that the defendant dying subsequent to the payment, the revival of the action against his executor, or even the commencement of a new suit, did not change the effect of the payment. This exception, therefore, is also unfounded, and the motion for a new trial must be denied.

<p style="text-align:center">Motion for new trial denied.</p>