### SLACK and others *vs.* BROWN and another.

Whether, where a *vessel* has been run down, or run afoul of by another ves-
sel, through negligence or wilful misconduct, the owner of the vessel in-
jured can, in a proceeding under the statute given a lien for damage upon
the vessel doing the injury, recover, besides the damage to the vessel it-
self, *consequential damages*—QUERE.

At all events, where the plaintiff in his declaration only claims for *dam-
age to the vessel*, he cannot recover beyond his claim.

Where a vessel proceeded against for such injury has been discharged
from seizure, upon the execution of a bond to pay, &c. and an action
is brought upon the bond, the defendant may *tender amends* on the
ground that the injury was *casual* or *involuntary*.

The plaintiff is entitled to a verdict for the sum tendered as damages, al-
though he refused to accept the same when tendered; if he recovers no
more than the sum tendered, the defendant is entitled to the costs ac-
crued subsequent to the tender; but if he recovers only six cents be-
yond, he is entitled to costs.

After a refusal, the plaintiff may *at the trial* elect to accept the sum ten-
dered, and if he does so, the defendant is bound to pay, or a verdict
must be rendered for the amount; and in such case the costs accrued
after demand and a reasonable time to pay, will be deducted from the
costs to which the defendant is entitled.

Whether a *trespass* or *injury* for which amends are tendered was *casual* or
*involuntary*, must be certified by the judge presiding at the trial.

THIS action was tried at the Albany circuit, in March,
1832, before the Hon. JAMES VANDERPOEL, one of the cir-
cuit judges.

The plaintiffs sued out a *warrant*, under the act to extend
the provisions of the law relative to proceedings for the *collec-
tion of demands against ships and vessels*, passed 26th April
1831. *See Session Laws of* 1831, *p.* 421. By the first sec-

tion of which act, it is enacted that whenever any ship or vessel shall have been run down or run afoul of, by any other ship or vessel, through negligence or wilful misconduct, and *shall have sustained damage* to the value of $50 or upwards, the owner of the ship or vessel sustaining the damage shall have a lien upon the vessel causing the damage, and may make application, in writing, to a proper officer for a warrant to seize the vessel ; setting forth in such application the name of the vessel causing the damage, the manner in which the damage was done, and the amount thereof; which officer is authorized to issue such warrant. The subsequent proceedings are directed to be in conformity to the provisions of the *revised statutes. 2 R. S.* 493, *et seq.* The warrant in this case was issued against the steam-boat *Ohio,* which was seized by virtue thereof, and subsequently discharged, on the defendants in this cause entering into a bond, on the 24th June, 1831, conditioned to pay the amount of all such claims and demands which had been exhibited to the officer issuing the warrant, and which should be established to have been *subsisting liens* upon the *Ohio,* pursuant to the provisions of the revised statutes. 2 *R. S.* 495, § 13. On which bond this suit was commenced, and pursuant to the 16th § of the statute, the plaintiffs declared on the bond, setting forth the same and the condition thereto attached, and then proceeding to state their cause of action as follows : that on the 4th June, 1831, they were the owners of a sloop called the *Charles,* which was run afoul of by the steam-boat *Ohio,* through the *negligence or wilful misconduct* of the persons navigating the steamboat, whereby the sloop Charles sustained great damage, to wit, to the amount of $400 ; that the plaintiffs applied to the recorder of Albany for a warrant against the Ohio, to enforce their lien for the damage sustained by the sloop Charles; that their claim for damage was a subsisting lien on the Ohio at the time of the application for the warrant, and at the time of exhibiting the claim, pursuant to the statutes in such case made and provided ; yet that the defendants have not paid, &c. The declaration contained a second count, varying from the first only in stating that the *Charles* was *run down,* instead of being run *afoul of.* The defendants pleaded the *general issue.*

On the trial, the plaintiffs proved that in June, 1831, while the sloop *Charles* was lying aground on the *Overslaugh* in the Hudson, she was run afoul of by the *Ohio* through the negligence of the persons navigating her, and the *damage done to the Charles* was $69. The plaintiffs offered to prove that, in consequence of the injury sustained, they had lost a trip of their vessel, had been obliged to employ another sloop to transport the cargo to New York, by which freight to the amount of $200 was lost, and that the vessel was so badly injured, it would have sunk had not *lighters* been employed to take out part of the cargo, which was accordingly done, and that the plaintiffs had been obliged to pay for such service $22: all which evidence was objected to by the defendants' counsel, on the grounds, 1. that the statute authorized a recovery *only of the damage done to the vessel*, and 2. that no other damages than those done to the vessel were claimed in the declaration. The evidence was rejected by the judge. On the part of the defendants, a stipulation of the plaintiffs was read, whereby it was admitted that on the 18th January, 1832 a legal tender was made by the defendants to the plaintiffs of the sum of $89,$\frac{79}{100}$, as the amount of damages sustained by the plaintiffs, and that a tender was made at the same time of the *interest* of the sum of $89, $\frac{79}{100}$, from the 1st June, 1831, together with all the *costs* that had accrued up to the time of the tender ; and after reading such stipulation, the defendants rested. The plaintiffs thereupon *offered to receive the amount of damages tendered* and demanded the same, and the defendants refusing to comply with such demand, the counsel for the plaintiffs insisted that after such refusal, the defendants were not entitled to the benefit of the tender ; but the circuit judge ruled that a party making a *tender* in pursuance of the provisions of the revised statutes, *after issue joined*, is not bound to bring the money into court, or to have it ready to pay whenever it should be demanded, but is entitled to a reasonable time to make payment after demand, and that the defendants were therefore entitled to the benefit of the tender, notwithstanding their refusal to pay. The judge charged the jury that the plaintiffs were entitled to recover *only the amount paid for repairs to their vessel*, and were not entitled

to recover for money paid to lighters or for loss of freight; and directed the jury to find whether a *tender* had been made in January, 1832. The jury found a verdict for the plaintiffs for $69, and also that the defendants, on the 18th January, 1832, legally tendered the amount so found by them, with *interest* and *costs* up to that day. The plaintiffs having excepted to the several decisions and charge of the judge, and having procured a bill of exceptions to be signed, now moved for a new trial.

*S. Dutcher jun.* for the plaintiffs, insisted that the evidence offered by the plaintiffs ought to have been received. The statute gives a lien upon the vessel causing the damage, to the extent of the damage sustained. It is a remedy *in rem ;* the *vessel* is substituted for the *owner*, the language of the statute being—if the *vessel run down shall thereby have sustained damage*, there shall be a lien upon the vessel causing the damage. The object of the statute was to give a remedy by a proceeding against the vessel, instead of the master or owner, who might be wholly irresponsible; and consequential damages are as much within the reason of the statute as damages for the direct injury to the vessel.

*S. Stevens*, for the defendants. The statute gives a lien only for the *damage done to the vessel* which has been run down, and not for any consequential damages sustained by the owner of the vessel; but if it were otherwise, the plaintiffs here cannot recover beyond the damage done to the vessel, for that alone is claimed in the declaration. If further damages were intended to be asked, they should have been specially alleged. 1 *Saund on pl. & Ev.* 344. *Bull. N. P.* 89.

*By the Court*, NELSON, J. Whether consequential damages, arising from running down the vessel, are recoverable or not under the act of 1831, (a question as to which there is some difference of opinion in the court,) the plaintiffs in this case were not entitled to recover them under their declaration. The consequential damages were special, and did not neces-

sarily arise from the injury complained of and consequently were not implied by law. To prevent surprise, the pleader should have stated particularly the special damages sought to be recovered. 1 *Chitty's Pl.* 386. They were the natural and legal consequences of the principal acts, and would be recoverable as consequential loss under the ordinary remedies. 9 *Wendell,* 325, *and cases there cited.*

Where an action at law is commenced for a *casual* or *involuntary trespass* or injury, the defendant before trial may tender amends ; and if the sum tendered is sufficient to cover the damages and costs, the plaintiff is not entitled to recover costs incurred after the tender ; but, if he proceeds, must pay costs to the defendant. 2 *R. S.* 553, § 20, 22. If the plaintiff *accepts* the tender and still proceeds in the action, the sum accepted must be deducted from the whole amount recovered, and judgment is rendered only for the residue ; and an entry of such *tender* and *acceptance* is made on the record. The plaintiff's right to recover, or his liability to pay costs, is determined by the amount of such residue. § 23. By these provisions, it appears that if the plaintiff refuses to accept the tender and proceeds in the action, and does not recover a sum exceeding the tender, he must pay the costs accrued after the tender ; which is but the application of the ordinary rule of paying money into court. 1 *Saund.* 33, c.,n. 2. 2 *Archb. Pr.* 203. The 23d § is a new provision, and very probably, in case of *acceptance* of the tender, puts the further litigation of the plaintiff under the peril of payment of costs subsequently accruing, unless he recovers a sum (beyond that tendered) which shall entitle him to costs under the general law of costs. In the other case a recovery of six cents beyond the amount tendered gives costs. If the plaintiff refuses to accept the tender, it is not to be stricken out of the declaration, as when money is paid under the 23d §, or into court, because his only mode of collecting it is by means of the judgment ; and in analogy to the practice of paying money into court, of which this was designed as a cheap and expeditious substitute, the plaintiff is entitled in any event to a verdict and judgment equal to the amount tendered. When money is brought into court, the plaintiff is at all events entitled to it. 1 *Saund.*

33, *n.* 2. 2 *Archb. Pr.* 203. Any other construction would be unjust. The defendant has the benefit of the tender, to the amount of it, throughout the subsequent litigation, the same as if so much had been paid into court; and this in consequence of his ability to prove that he has acknowledged so much to be due, and has offered to pay it. For the like reason if the plaintiff changes his opinion and elects to accept, and stops his suit short of a trial, he should be permitted to do so, deducting the costs that the defendant has been subjected to since the tender. This is also analogous to the practice of which this is a substitute. 2 *Archb. Pr.* 203.

Although in *form* this is an action of debt upon bond, it may be considered as coming within the statute allowing *tender of amends,* and is substantially an action of trespass. But the defendant can make the tender only when it is *casual* or *involuntary ;* and as the right exists only by virtue of the statute, it devolves on him to bring his case within its terms. How that should be done has not been prescribed by the act, and is therefore necessarily left to the regulation of the court. It can be done in one of two ways—either by the *finding of the jury,* or by the *certificate of the presiding judge.* The latter is the most simple mode, and is in harmony with the regulation of the statutes in similar cases, 2 *R. S.* 653, § 8, and is therefore prescribed by the court as the mode to be adopted in these cases.

The plaintiffs offered at the trial to accept the damages tendered, which offer was refused. Under the above exposition of the statute, the plaintiffs were entitled to them. The defendants undoubtedly might claim a reasonable time to procure the money, but an absolute refusal to pay would be an abandonment of the tender. As the extent of the refusal in this case is not perfectly clear, we are disposed to say that the defendants may still pay the amount tendered, if the plaintiffs elect to receive it. But the costs subsequent to the refusal at the trial, must be deducted from those the defendants are entitled to intermediate the tender in January, 1832, and the offer to receive them at the trial.

New trial granted.