## RICH vs. JAKWAY.

Where it is sought to charge A. for the wrongful act of B., done at his request and by his direction, it is not competent to inquire of B. whether he would have done the injury, had he not *understood* from A. that he would pay the damage, and whether he did the act with the *understanding*, from A., that he would pay the damage.

The understanding of B., in such a case, of what A. would do in regard to the wrongful act, can be learned only from the transaction itself, including what was said between A. and B. in relation to it, and all the accompanying circumstances. It is to be inferred from such evidence; and the inference belongs exclusively to the court.

In such a case, it is at least necessary, in order to charge A. with procuring the act, that it should appear he said and did what amounted to a request or direction to commit it; from which it might be inferred that it was so understood by both A. and B.

THIS was an appeal, by the plaintiff, from a judgment of the county court of the county of Cayuga. The cause was commenced before a justice of the peace. The plaintiff alleged in his complaint that he was the owner of a building in the town of Cato, and in the possession of the same; and that the defendant, in the month of Oct. 1852, or the last of September, without the leave or license of the plaintiff, and with the intent to injure him, procured a colored man of the name of Freeman to shoot through and injure a tin pipe, the property of the plaintiff, in said building, commonly called a ventilator; also that he agreed with Freeman that if he would shoot through said pipe he would pay all damages; also that he requested Freeman to commit the wrong as aforesaid, and he would be responsible for all damages; and that Freeman did such act by the request of the defendant. The defendant, by his answer, denied the allegations in the complaint. On the trial, Isaiah Freeman was examined as a witness on the part of the plaintiff, and testified that he " was at Jakway's corners some two or three weeks ago with a gun; saw defendant there, knows a building occupied by plaintiff as an office; was on the steps of a store occupied by Stewart; defendant was there; I think I had a gun there; I fired the gun off when I stood on the steps." Question: " What did you shoot at, if any thing?" Objected to, and objection overruled. Plaintiff except-

ed.  " I shot at a tin pipe, I supposed it to be ; the pipe was in
the top of the building of the plaintiff, and was the pipe farthest
from the road.  I aimed at the pipe."  Question : " Did defend-
ant have any conversation with you about shooting at the pipe ?"
Objected to, and objection overruled.  " Had a gun, and talked
with Edwin Allen about shooting at the chimney on the martin
cage, when defendant directed him to shoot.  We had been talk-
ing about shooting at the pipe."  Question : " Would you have
shot at the tin pipe, if you had not understood from defend-
ant that he would pay the damage?"  Objected to, and objection
overruled.  Answer : " I don't think I would."  Question : " Did
you shoot with the understanding from defendant that he would
pay the damage ?"  Objected to, and objection overruled.  " I
did ; I supposed it to be that."  After the hearing of other tes-
timony, the jury found a verdict for the plaintiff for ten dollars.
Judgment was entered by the justice for that sum, with costs.
On appeal to the county court, the judgment of the justice was
reversed ; and the plaintiff appealed to this court.

*Geo. Rathbun,* for the appellant.

*S. V. R. Cooper,* for the respondent.

*By the Court,* T. R. STRONG, J.   It was a question on the
trial before the justice, whether the direction or proposition of the
defendant to Freeman to shoot the gun, was to shoot at the tin
pipe on the plaintiff's building, or at a martin cage on a build-
ing of the defendant.   That appears to have been the only ques-
tion seriously litigated ; for it was proved on the part of the de-
fendant, as well as on the part of the plaintiff, that Freeman was
told to shoot, by the defendant.   It was not competent for the
plaintiff, in reference to that question, to inquire of Freeman
whether he would have shot at the pipe if he had not understood
from the defendant that he would pay the damage ; and whether
he did shoot with the understanding, from the defendant, that he
would pay the damage.   The understanding of Freeman of what
the defendant would do, in regard to the wrongful act, could be

learned only from the transaction itself, including what was said between him and the defendant relating to it, and all accompanying circumstances. It was to be inferred from such evidence; and the inference belonged exclusively to the justice. The defendant was not responsible for the act, unless what he said and did justified such an understanding by Freeman, or induced the act; and this also was for the justice to determine, upon the like evidence before him. As well might a party to a contract, in a case where he may be examined, be permitted to testify as to his understanding of what the contract was, without or after giving what was said, as testimony like that in question be received. It is very clear that such evidence is not admissible in regard to a contract. The doctrine was distinctly held in *Murray* v. *Bethune*, (1 *Wend.* 191.) Sutherland, J., who delivered the opinion of the court, there says: "Any act or declaration of either party connected with the transaction, whether prior or subsequent thereto, may be given in evidence in order to show what the agreement was. A fact is thus proved, from which a jury may infer the understanding or intention of the parties; but the mere impression or understanding of one of the parties, not communicated to the other, can never justify the inference that the understanding of the other party was the same; and in order to constitute a contract or agreement, the assent of both parties is requisite. It would be a most dangerous relaxation of the rules of evidence. There would be no possibility of convicting a witness of perjury, on the ground of such evidence. This understanding of a transaction, if it may be called a fact, is one resting entirely in his own mind, and which cannot be disproved. There is nothing peculiar in this case, to take it out of the general rules of evidence." Here it was at least necessary, in order to charge the defendant with procuring the act, that it should appear he said and did what amounted to a request or direction to commit it; from which it might be inferred that it was so understood by both Freeman and the defendant.

If there had been any question as to the defendant having directed Freeman to shoot the gun at either object, the under-

standing of Freeman would have been equally inadmissible, and for the reasons above stated.

The justice having allowed the objectionable inquiries, against the objection of the defendant, and as the evidence given in answer to them was calculated to, and probably did, have an influence in producing his decision, I think the county court properly reversed the judgment of the justice, and that the judgment of the county court should be affirmed.

Judgment affirmed.

[Monroe General Term, September 4, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]