COOK, plaintiff in error, v. PEOPLE.

*Seduction — indictment — election between charges — chastity of prosecutrix — evidence — hypothetical question — pregnancy.*

In an indictment for seduction under promise of marriage two offenses were charged, one as having taken place July 2, the other August 19. *Held,* that the refusal of the court at trial to compel the prosecution to elect upon which charge it would proceed could not be alleged as matter of error.

The prosecutrix testified to the first offense charged. *Held,* that the admission of her testimony to prove the second charge was error. After the commission of the first offense she was no longer "chaste," and the crime could not be committed as against her.

Evidence on the part of the people that the prisoner, subsequent to the seduction, had refused to marry the prosecutrix, *held,* inadmissible.

On direct examination, the prosecutrix having been questioned as to whether she was induced to have the connection on July 2 by the promise of marriage, was further asked: "And would you have consented to it in the absence of a promise?" *Held,* that the question called for a merely speculative answer on the part of the prosecutrix, and was inadmissible. *Kenyon v. People,* 26 N. Y. 203, explained and limited.

The existence of pregnancy is not essential to a conviction under the statutes in relation to seduction.

WRIT OF ERROR to the general sessions of the county of Jefferson, to review a conviction for seduction under promise of marriage. The facts appear in the opinion.

*L. H. Brown,* for plaintiff in error.

*P. C. Williams,* district attorney, for the people.

TALCOTT, J. The writ of error in this case brings up the record of a conviction of the plaintiff in error, for seduction under a promise of marriage, under the statute of 1848; with a bill of exceptions attached.

The first exception to which our attention is called is to the refusal of the court to compel the district attorney to elect upon which count of the indictment he would proceed. The indictment contains two counts, each charging an offense under the statute, alleged to have been committed against Mary Lutz: one charging an offense committed on the second of July, and the other on the 19th of August. It appears from the course of the trial that these two separate charges were not inserted in the indictment to meet any apprehended variance as to time, or otherwise, but were, in point of fact, intended to charge two distinct offenses committed at different times. As a general rule, it is not permissible to charge two distinct felonies in the same indictment, as it tends to confound and embarrass the defendant in his defense, and, in general, where an indictment contains charges of two or more felonies, the public prosecutor should be compelled to elect upon which he will proceed to try the prisoner. The modern doctrine, however, is, that the refusal to compel an election in such a case cannot be alleged for error, but is a matter of discretion. *People* v. *Baker,* 3 Hill, 159. Therefore, whether the offense described in this indictment be a misdemeanor, as it is denominated in the statute creating it, or a felony, no remedy for a refusal to compel an election can be obtained by writ of error.

But we think a clear error was committed in a subsequent ruling growing out of these two charges. After the prosecutrix had testified clearly and fully to the commission of the offense on the second of July, as charged in the first count of the indictment, the date being distinctly fixed and positively testified to, the public prosecutor was permitted, against the objection and

exception of the defendant, to go on to prove the offense charged in the second count of the indictment, and alleged by the prosecutrix to have been committed on the 19th of August, and subsequent to the one which she had first described. This, we think, was clearly wrong without reference to the question whether, notwithstanding no election has been compelled, any more than one distinct, substantive and separate felony can be proved under one indictment. After the prosecutrix had testified to the illicit intercourse on the second day of July, the people themselves had proved that it was impossible that the second count in the indictment could be true. An important requisite to the offense charged is, that the female against whom it is alleged to have been committed, shall have been of a previously chaste character. The requisition of the statute, it is held, relates not to the reputation of the prosecutrix but to her actual condition, and requires absolute personal chastity. *Kenyon* v. *People*, 26 N. Y. 203. It is, therefore, impossible that the offense be twice committed against the same female. If she has once consented to and willingly permitted sexual intercourse with herself, she no longer possesses that chaste character required by the statute as an essential ingredient of the offense. Accordingly, where a seduction under a promise of marriage had taken place four or five years before the indictment, and the illicit intercourse and the promise of marriage had continued down to within less than two years before indictment found, it was held that the offense could not have been committed within the two years limited by statute before indictment found. *Safford* v. *People*, 1 Park. Cr. 474. When, therefore, the prosecuting attorney had, as he insists, clearly established the commission of the offense on the second day of July, he undertook that which was legally impossible when he undertook to prove the charge set out in the second count. The evidence does not appear to have been offered merely to prove a continuance of the illicit intercourse; for such purpose it was immaterial, and so far as we can see from the case it was an attempt to sustain the second count of the indictment by proof of an entire new seduction and new promise of marriage, each of which was objected to.

It is further shown, by the bill of exceptions, that an offer was made on the part of the people to prove that, subsequent to the seduction, the prisoner had refused to marry the prosecutrix. This was objected to on the part of the prisoner, held admissible by the

court, and an exception taken. We cannot imagine any theory upon which, as the offense is described by the statute, this testimony was admissible. Perhaps the statute might have been deemed more reasonable if it had provided that the offender should not be liable to the penalties of the law, provided he was in good faith ready and willing to fulfill the promise upon the faith of which the female had submitted to his embraces, but the legislature has not seen fit to make any such provision. The willingness or unwillingness of the party charged with the offense to perform his promise is wholly immaterial. The statute provides that an actual marriage between the parties should constitute a bar to a conviction. No proof short of actual marriage would have availed the prisoner. And the proof offered against him was wholly immaterial to the offense, and must therefore be inadmissible. The counsel for the people does not undertake to justify this ruling, but insists that the exception is unavailing because the question was not directly answered. The answer which was given by the witness was to the effect that the prisoner had married another person subsequent to the seduction of the prosecutrix. This was a substantial answer to the question. In actions for breach of promise to marry, marriage to another is held equivalent to a refusal to marry the plaintiff. The statement was intended as in answer to the question, was so received and was such for all practical purposes. We can see no legitimate purpose for which the question could have been asked, and persisted in, after objection and exception. The testimony was calculated to prejudice the position of the prisoner, excite sympathy for the prosecutrix, and could have been designed for no other purpose. We think the admission of it was clearly erroneous.

Another question to the prosecutrix was permitted by the court against the objection and exception of the prisoner's counsel. It was as follows: "Were you induced to have the connection on the second of July by the promise of marriage; and would you have consented to it in the absence of a promise?" To which the witness answered that she was so induced, and would not have consented in the absence of a promise. This was objected to by the prisoner's counsel on the ground that it was a question for the jury to determine, and so we think, as to the latter branch of the question, to wit: calling for a statement as to what would have been her conduct under circumstances different from those to which she testified. Hypothetical questions are only permissible in regard to certain

matters involving science or skill. To constitute the offense for which the prisoner was on trial, the seduction must have taken place "under promise of marriage." Whether this means only that the seduction must have taken place while a promise of marriage between the parties existed, or, according to the generally received opinion, that the illicit intercourse must have been procured through the influence of the promise of marriage, the question was equally obnoxious to objection. If it is only necessary that a promise of marriage should have existed, the question was immaterial, and introduced an immaterial issue; but if it be necessary, which we think is the true construction of the statute, that the jury should be satisfied that the consent of the female to the illicit intercourse was induced by means of the influence of the promise of marriage, and in the expectation and belief that the promise would be performed, then the question called for a mere speculation, and substituted the prosecutrix in the place of the jury. When the court held the question to be a proper one to put to the witness, it necessarily held that her answer would be legal evidence on the subject. That it was so considered by the court is further evinced by the charge to the jury, in which their attention is specially called to the fact that the prosecutrix testified " that she never would have done it if it had not been for the promise of marriage."

At most, this testimony could have been nothing more than the belief of the witness, and a witness under every possible inducement to assert a particular belief. Belief without knowledge or recollection is not evidence. 1 Phil. Ev. 290; *Butler* v. *Benson,* 1 Barb. 526, 557.

Belief of a witness from entries made in his docket that he had issued a summons, is not admissible. *Brown* v. *Cady,* 19 Wend. 497. "Would you have shot at the tin pipe if you had not understood from the defendant that he would pay the damage?" is inadmissible. *Rich* v. *Jackway,* 18 Barb. 357. An underwriter cannot be permitted to testify that if he had known certain facts of which he was ignorant he would not have assumed a particular risk. *Jefferson Insurance Co.* v. *Cotheal,* 7 Wend. 72. "Would you have indorsed this note if you had not had their note and negotiated it?" was held by the court of appeals to be inadmissible, upon the distinct ground that it called for the operations of the mind and not for facts. *Newell* v. *Doty,* 33 N. Y. 94. "What, under your instructions from Mr. Hawke, or your agreement with him,

Cook v. People.

would you have done with the proceeds if you had effected a sale?" was held to be inadmissible. *Cowdrey* v. *Coit*, 44 N. Y. 382. "Did you give, or intend to give, any thing more than your opinion in regard to its condition?" asked of a witness sued for fraud in the sale of a boiler, was quite recently held by the court of appeals to be inadmissible. *Waugh* v. *Fielding*, 48 N. Y. 681. Some of the cases referred to, it is true, are not put upon the distinct ground that hypothetical questions are inadmissible. But Mr. Greenleaf, upon the authority of *Berthon* v. *Loughman*, 2 Starkie, 229, lays down the rule explicity that a witness cannot be asked what he would have done in a particular case. Greenleaf's Ev., § 441. And McNally (McNally's Ev., ch. 28) says: "A witness, when under examination in chief, must not depose as he thinks or persuades himself to believe. He must swear from his knowledge of the facts."

It is true it has been held, in certain cases, that intentions which have existed in the mind may be inquired directly from the witness, in cases where the existence of a particular intent at a certain time is material. As in the case of making an assignment charged to have been made with intent to defraud creditors. But this is acknowledged to be an innovation upon the general rule, was received with great doubt, and has been adhered to in the particular cases on the principle of *stare decisis*. The judicial inclination is clearly against extending even this principle to new cases. *Cortland Co.* v. *Herkimer Co.*, 44 N. Y. 22 ; *Waugh* v. *Fielding*, 48 id. 681 ; *Ballard* v. *Lockwood*, 1 Daly, 158. Certainly it is a most unsafe kind of evidence, as it is not only unsusceptible of contradiction by any human testimony, but the most honest witness may very well be mistaken as to what were the operations of his mind on a former occasion. But it will be observed that these inquiries referred to, and which have been held admissible in certain cases, relate to a supposed past fact; that is, the inquiry is as to what particular intent or design was entertained by the witness on a certain occasion and under existing facts. Here the inquiry is not as to any past or existing act, but as to what would have been the mental operations and desires of the witness under a state of facts contrary to those which she has testified did, in fact, exist.

Judge ALLEN, delivering the opinion of the court of appeals in *Teerpenning* v. *Corn Ex. Ins. Co.*, 43 N. Y. 279, says: "As a rule witnesses must state facts, and not draw conclusions or give opinions. It is the duty of the jury or court to draw conclusions from the

evidence and form opinions from the facts proved. The cases in which opinions of witnesses are allowable constitute exceptions to the general rule, and the exceptions are not to be extended or enlarged so as to include new cases except as a necessity to prevent a failure of justice." The principle thus stated seems to be decisive of the question here presented. We apprehend that the statement of the prosecutrix in answer to such a question, would not afford much aid to an intelligent mind in arriving at a satisfactory conclusion on the point, and, as far as it had any influence, it would tend to substitute her in place of the jury, and induce the latter to suppose that the question was foreclosed by her positive testimony.

It was claimed on the argument that such a question was held to be admissible, under an indictment of this character, in *Kenyon* v. *People*, 26 N. Y. 203. It is proper, therefore, to examine that case with more care as, if we should find the question distinctly passed upon by the court of last resort, it would be our duty to follow that ruling, however opposed we might deem it to the established law and principles of evidence. We think a careful examination of that case furnishes no authority for the proposition, that a witness may be asked what would have been his conduct at a past time under a supposed state of facts which did not exist. That case first makes its appearance in the reports in 5 Park. Cr. 254 in the supreme court of the seventh district. A question put to the prosecutrix was: "What influence did this promise of his to marry you have upon your mind by way of inducing you to consent to have sexual intercourse with him?" She answered: "I thought he was going to have me and nobody would know it." Now it is here to be observed, that although the question was put in such form that the witness might perhaps have been readily impelled to answer it by stating she would not have consented except for the promise, yet the question strictly called for no such answer, and was not so answered. It was analogous to the question as to what intent had existed in the mind of the witness on a former occasion, or rather to the question sometimes put on the trial of indictments for false pretenses as to the effect of the representations on the conduct of the witness, not what would have been his actions under a different state of facts. The answer of the witness was confined to a statement of what she claimed she actually did believe under the state of facts which existed, and she did not attempt to make any statement as to what she would have done under a different state of facts.

As the case is reported ·in the supreme court, it does not appear that the counsel for the prisoner made any point upon the admission of this question and answer, and the opinion of the court makes no allusion to it. In the report of the case in the court of appeals, it does not appear that any point was made upon the question, and the opinion of a majority of the court, delivered by Judge WRIGHT, makes no allusion to it. But BALCOM, J., who delivered a partially dissenting opinion, does consider the question, and holds the evidence to be admissible upon grounds and authorities which illustrate the distinction between the question in that case and the one at bar. He says:. "Questions as to what influence the representations of the prisoner have had upon the mind of the prosecutor have generally been allowed in cases where their effect was a material point to be determined. *People* v. *Haynes*, 11 Wend. 557; *People* v. *Miller*, 2 Park. Cr. 197. And it is now settled that witnesses may, in certain cases, state what their undisclosed intentions were in transactions. An assignor may testify whether he intended to hinder, delay or defraud his creditors in making an assignment. *Seymour* v. *Wilson*, 14 N. Y. 567; *Pope* v. *Hart*, 35. Barb. 630. And there is no difference in principle .between permitting a witness to testify what his undisclosed intentions were, or whether he had a particular one in doing a specific act, and allowing him to state the undisclosed effect that a ,certain representation or promise had on his conduct." Thus it appears that Mr. Justice BALCOM held the question and answer in that case admissible, solely upon the ground that it was within the principle of those cases which held it permissible to ask a witness as to the existence of an undisclosed intention, assumed to have existed as a matter of fact at a former period, and as to what effect was in fact produced upon the mind of the witness by certain representations which, while perhaps tending to produce the same effect upon the minds of a jury, is still essentially a different thing from asking the witness to speculate as to what he now believes would have been his conduct on a former occasion if the circumstances had been different. So that, considering the case of *Kenyon* v. *People* an authority for the question there put, and the answer there given, it is not this case, and although in the light of the more recent decisions, some of which have been referred to, that case may well be considered of doubtful authority on this point, it is not necessary to question it here.

This is not a kind of case which calls for any departure from the established and safe principles of evidence; such cases are sufficiently dangerous to the party accused when he is freely accorded all the protection which the strictest rules of evidence afford. A charge of this description is, in this respect, like that of rape, which is said by Lord HALE, in enjoining caution in its investigation, to be "an accusation easy to be made, hard to be proved and harder to be defended by the party accused, though never so innocent." Lord HALE further says, after referring to several false charges of rape which had occurred within his experience: "I only mention these instances that we may be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon, without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over hastily carried to the conviction of the person accused thereof, by the confident testimony, sometimes, of malicious and false witnesses." 1 Hale's P. C. 635. The experience of most professional men, who have had much part in the administration of criminal justice, will admonish them that care is required lest the statute creating the offense described in the indictment in this case be sometimes used as the facile instrument of extortion or revenge, instead of a shield for innocence and a protection to female virtue. We are of the opinion that an error in law was committed in the ruling upon the question as to whether the witness would have permitted the illicit intercourse without the promise of marriage.

After the prosecutrix had been permitted to make her statement as to the transactions of the 19th of August, in which she had stated that the prisoner spent the night with her at her father's house, the prisoner proposed to prove an *alibi* on that occasion, but the evidence was objected to and excluded, and an exception taken to the ruling. We are wholly unable to perceive any sufficient ground for this ruling. The objection was that the evidence was immaterial, and it is urged at the bar that the evidence concerning the transactions of the 19th of August have been withdrawn from the case on the motion of the prisoner's counsel. The bill of exceptions does not show this to have been so as matter of fact. It appears that the counsel for the prisoner moved to have the evidence stricken out, but the court made no decision on the subject. The district attorney consented that portions of the evidence should

be withdrawn, but insisted that other portions should be retained, but it does not appear that the prisoner's counsel accepted even this offer of the district attorney. The prisoner, so far as we can see, had a clear right to prove an *alibi* on the 19th of August, if he could do so. It would not only have disproved the allegations of the prosecutrix as to transactions positively averred to have occurred at that time, but have tended to discredit the prosecutrix as to her other statements.

It seems that pregnancy did not result from the alleged intercourse. And the counsel for the prisoner claims that without this, a conviction cannot be had under the statute. The statute under which the indictment is found prescribes no such requisite to the offense. It is true pregnancy is usually proved in the civil action for seduction, but this is because it is necessary for the party plaintiff to show damages sustained by reason of the inability to labor of the party seduced, in the language of the common law, "*per quod consortium amisit.*"

There are other exceptions contained in the case, but all the questions likely to arise on a new trial have, we believe, been considered.

The counsel for the people claims that the testimony affords quite satisfactory evidence that the conviction was just upon the merits, aside from the objectionable rulings. With this we have nothing to do. It is the province of the jury to decide on the facts, and the duty of the court to see that no illegal evidence which could possibly prejudice the prisoner is permitted to be given, against his objection.

We have been discussing these questions not only as applicable to the case of the prisoner, but as applicable to the case of all other persons who may be similarly indicted, and some of whom may be accused, "though never so innocent."

The judgment of the general sessions is reversed and a new trial ordered in that court, to which the record and proceedings are remitted.

*Judgment reversed and new trial granted.*