StoNE, J.
The suit was to recover damages for the alleged loss of a quantity of oats shipped over the road of appellant, and appellee got judgment in the Court below against appellant for the sum of $272.52 and costs.
The bills of lading, expense bills and receipts set out in the record, together with the testimony of the witnesses in the case, establish the following facts: That the oats were shipped by rail from Kansas in car lots, consigned to the order of the shippers at Buena Vista, with directions to “notify W. R. Harp,” the appellee; that the oats were delivered by the connecting Road to the appellant company at Denver, and thence transported over appellant’s road to Buena Vista, w'here notice of arrival was sent to appellee, and a day or two afterwards, being-uncalled for, were delivered to Brown & Co., warehousemen, for storage. This was about the middle of April. That appellee called at the warehouse from time to time, but did not present the duplicate bills of lading nor pay for the freight and storage until about the middle of June; that Brown’s was the only warehouse that would take the goods; that they were responsible warehousemen; that Buena Vista was the then terminus of the railroad, the warehouses were all full, and hay and grain were piled up wherever they could best be put outside of the warehouses; that the oats in question were piled in sacks on boards laid upon the ground, a wire fence put up round them, a watchman guarded them nights, and when it snowed or rained, covered them with tarpaulins; that some of the oats next the ground were injured by sprouting, and that cattle broke through the fence at times and damaged and destroyed some; that the oats were as well-taken care of as was possible under the circumstances; that at the end of about two months from the time the oats were put in store, the appellee succeeded in raising money to pay the charges, and called at the warehouse for that purpose; that he then complained that the oats were damaged, protested that the storage charges, which amounted to $275, were too much; that after considerable wrangling over the matter, the warehousemen offered to settle for $75, “and call the whole damage and shortage on the oats square; ” that thereupon appellee accepted this proposition, paid the $75, and at the same time signed the receipts, *57 which were put in evidence, acknowledging the receipt of the full quantity of the oats according to the bills of lading, in good order and condition; that appellee agreed to this settlement as to charges, damage and shortage, and signed the receipts for the oats voluntarily and without protest.
It was also shown in evidence that the appellant railroad company, after delivery to the warehouse company, and taking receipt for the oats, according to custom, had no further control, care or charge of the goods in any way. The appellant admitted that there was a loss of two sacks of oats in shipping, which probably occurred on its line of road; that the value of these, with the freight therefor added, would amount to about seven dollars, and that at the time, the appellant tendered appellee twenty dollars to cover this admitted loss, and the costs of suit up to that time, but that the tender was refused. There is no conflict in the testimony, except in the denial of the appellee himself that his settlement with the warehouse company included the shortage as well as the storage of the oats; but the testimony of the other witnesses together with the receipts signed by appellee, amply establish the fact against such denial.
Upon the facts thus established and presented by the record before us, the judgment of the Court below cannot stand.
The principal loss for which appellee sought to recover, occurred while the grain was in the custody of the warehouse-men, who are not charged with the loss, apd against whom this loss was adjusted in the. settlement. It is suggested in the brief of counsel that the Court below based the judgment upon the supposition that our statute “concerning unclaimed freight,’.’ (General Laws, p. 645), rendered the railroad company liable for the care of the goods until the expiration of thirty days after their receipt at the point of destination.
While we do not conceive that this statute is intended to affect the settled common law liability of common carriers, or to do more than to provide for a sale and just disposal of the proceeds of unclaimed goods, yet we do not deem it necessary, under the facts in this case, to enter into a discussion of this statute, or to even state the familiar doctrine of the common law governing carriers as such, and their liabilities *58 as warehousemen after the goods have been stored at the point of destination. Had appellee refused to settle for the freight and storage as he did, and receipt for the full quantity in good condition as shipped, a question of liability might have arisen which is not now necessary to decide. Under the facts of the case as presented, it is immaterial whether the warehouse company be considered as agents of the railroad company in the storage of the goods or not. The settlement that appellee made with the warehouse company was a complete discharge and waiver of any claim or right of recovery for loss or damage to the goods while in the custody of that company, aside from any question as to his own fault in suffering them to remain in store, in the condition they were compelled to be kept, for two months after he was notified of their arrival.
For the amount of the loss, however, which the appellant admitted its liability for by the tender, the appellee is entitled to judgment; for in respect to this tender it must be said that it lacked the requirements of a good tender. Our former statute respecting tender, and with which the appellant appears to have attempted a compliance, was repealed by the Code, and the Code provisions adopted as a substitute seem scarcely applicable to the case at bar. Be this as it may, there was no compliance in this case with the Code procedure. Nor was it good as a common law tender, for it does not appear that it was made before suit brought, nor was the money deposited in Court, nor was the tender kept good by renewal in the County Court, where the trial was de novo. Besides, at common law a tender could not be made in the case of a claim for unliquidated damages, although that is now done under English statutes.
It is held, however, that a tender, when made, is an admis-, sion of an amount due equal to the sum tendered, and that while a verdict may be rendered for more than the amount tendered, it cannot be rendered for less. And this, too, although the tender be defective, or even be offered in a case where it cannot be legally made or pleaded, and for such reasons be held unavailing to save costs. Cilly v. Hawkins, 48 Ill., 309; Monroe v. Chaldeck, 78 Ill., 429; Slack v. Price, 1 *59 Bibb, 275; Bailey v. Bucher, 6 Wells, 75; Slack v. Brown, 13 Wend., 390; Eddy v. O'Hara, 14 Wend., 221; 2 Waite’s Prac., 585.
H. C. Dillon, for appellant.
The judgment, therefore, will be reversed, and the case remanded, with direction to the Court below to enter a judgment in favor of appellee and against the appellant for the sum of seven dollars and seventy-five cents, damages, the amount admitted by the appellant to be due, and for costs.

Reversed and remanded.