THE ROSSEND CASTLE.

DILLENBACK *v.* THE ROSSEND CASTLE.

*(District Court, S. D. New York.* April 5, 1887.)

1. SHIPPING—CHARTER-PARTIES—REFUSAL TO TAKE GOODS—RULE OF DAMAGES —LIVE-STOCK—PROFITS EXCLUDED.

Upon a refusal by the ship to receive goods, pursuant to charter, for transportation to a foreign port, the rule of damages is: (1) The difference in the market price of transportation; or, (2) if there be no market price and the adventure is not broken up, the actual cost of subsequent transportation by another vessel, together with the expense, in the case of live-stock, of keeping the stock for a reasonable time until other transportation could be procured, with an allowance for depreciation, and the difference in the market value, if any, during the delay. Where such proof is available, it affords a complete indemnity by a rule comparatively simple, and complicated computations of estimated profits, not alleged in the pleadings, should be excluded.

2. TENDER—PAYMENT INTO COURT—ACCEPTANCE—COSTS.

A tender and payment into court is a continuing offer, which may be accepted at any time. The libelant is entitled to the benefit of the amount deposited at all events; but if he does not accept the offer, and in subsequent litigation recovers no more, he must pay costs from the time of the deposit.

3. SAME—CASE STATED—CARRIAGE OF SHEEP—FOREIGN MARKET.

The libelant contracted for the right to transport sheep on the deck of the steamer R. C. from New York to Newcastle. Afterwards the R. C. refused to take the sheep. The libelant in the mean time had sold the right of transportation of a portion of the sheep at an advanced rate of 25 cents per head. The residue were transported to Bristol, England, by another steamer that sailed six days afterwards, and arrived at nearly the same time. There was no substantial difference between the market at Bristol and at Newcastle. It appearing that there was no market price for the transportation of sheep at New York at the time of the breach of the charter, and there being no averment of special damage, *held,* that the rule of damages was (1) the actual loss of 25 cents per head upon the rights sold; (2) upon the residue, the difference in the actual cost of subsequent transportation to Bristol, with the expense for keeping the sheep during the delay, and the depreciation and difference in the market price in the mean time, if any.

Exceptions to Commissioner's Report.

*George C. Coffin,* for libelant.

*Butler, Stillman & Hubbard* and *Wm. Mynderse,* for claimant.

BROWN, J. On the sixteenth of July, 1879, by a charter executed by the agents of the Rossend Castle, the libelant became entitled to load all the available space on deck for the transportation of sheep from New York to Newcastle on Tyne at five shillings per head, allowing five superficial feet to each sheep. The deck space was sufficient for from 800 to 1,000 sheep. The ship sailed on the eighth of August following.

About the first of August the libelant was notified that the sheep could not be taken on board. This suit was brought to recover damages for breach of the charter. All objection to the form of the action *in rem* being waived, the only question is as to the amount of damages.

The libelant sold his right to transportation, as respects 650 of the sheep, at an advanced rate of 25 cents per head. By the breach of the charter he was deprived of this advance, and his damages, as respects 650 of the sheep, are therefore $162.50, with interest from August 1, 1879, which the commissioner has reported.

As respects the remaining 350, a long and laborious litigation has been carried on in the libelant's endeavor to prove, as the rule of damages, the profits he might have made by the transportation of the sheep to Newcastle. A great deal of evidence has therefore been given concerning all the items entering into such a computation,—the market price of the sheep here, the cost of keeping them here, the cost of keeping them on board ship, the probable mortality, and the estimated depreciation in weight and in quality upon the voyage, the estimated average weight at Newcastle, their market price there, and the expenses and charges in marketing them at Newcastle. As the result of all the evidence on these points, and under this mode of ascertaining the damages, which was that insisted upon by the libelant, the commissioner has found that the libelant sustained no loss by the breach of the charter, as respects the 350 sheep, because he finds that the transportation and marketing of these sheep at Newcastle would have been attended by a loss of $69.85. Upon numerous exceptions by the libelant, an elaborate argument has been made touching almost all the material items entering into the above mode of computing damages.

I cannot sustain the mode of ascertaining damages adopted by the parties. Where there are different modes of ascertaining the actual loss, that which is simple and direct, and which affords a complete indemnity, should be adopted, rather than a different mode that is complicated by many uncertain and hypothetical elements. Had there been any market price for the transportation of sheep at New York, the difference between the contract price of transportation and the market price at the time of the breach of the charter, together with the cost of keeping the sheep a reasonable time until other transportation could be secured, and the expense of obtaining another charter, (the foreign value remaining the same,) would furnish complete indemnity; and that would therefore be, in the absence of any plea of special damage, the proper rule of damages. *Ogden* v. *Marshall*, 8 N. Y. 340; *Featherston* v. *Wilkinson*, L. R. 8 Exch. 122. In this case there was no such established business in the transportation of sheep as fixed a market price. This would let in the next best evidence as proof of the actual loss. *Rice* v. *Manley*, 66 N. Y. 82, 88; *Harris* v. *Panama R. Co.*, 58 N. Y. 660, 3 Bosw. 7, 5 Bosw. 312.

The libelant, however, shortly afterwards, procured transportation of the same sheep from New York to Bristol, England, on board the steamer Bristol, which sailed from New York six days only after the Rossend Castle, and arrived at nearly the same time as the Rossend Cas-

tle.   The rule invoked by the libelant can only be properly applied when the adventure has been broken up by the breach of contract, or when there is no simpler rule of indemnity practicable.   *Bracket* v. *McNair*, 14 Johns. 170.   The adventure in this case was not, in effect, broken up.   Through transportation by the Bristol the libelant has had substantially the benefit of his proposed adventure.   Except some slight charges for transportation, there was no material difference between the market at Bristol and the market at Newcastle,—no such difference as would justify the libelant in treating his adventure as entirely broken up by the breach of the charter, or in claiming hypothetical profits as the rule of damages.   The simple rule which affords indemnity in this case, therefore, is the difference in the rate of transportation contracted for and that paid to the Bristol, together with the expenses of the delay in reaching the English market, if any, and perhaps some allowance for depreciation during that delay, and the difference, if any, between the Newcastle and Bristol markets.

The additional documentary evidence submitted upon the hearing of the exceptions would indicate that the price of transportation by the Bristol was only $1 per head, or 22 cents less per head than that agreed on by the Rossend Castle.   I am satisfied, also, that at least 100 sheep should be deducted from the number of 1,000 claimed for the libelant under the charter, since the whole number of 1,000 would require all the hatches to be occupied.   By the proper rule of damages, the sum of $400, besides costs, tendered and deposited in the registry of the court by the defendant on the twenty-seventh of October, would more than indemnify the libelant for his loss, including interest.

A tender and payment into court constitute an admission that the amount tendered is due, and is a continuing offer, which can be availed of at any time.   1 Saund. 33, note 2; *Snow* v. *Miles*, 3 Cliff. 608; *The Walter W. Pharo*, 1 Low. 437, 438; *Becker* v. *Boon*, 61 N. Y. 317, 322; *Murray* v. *Bethune*, 1 Wend. 191; *Slack* v. *Brown*, 13 Wend. 390.   Rule 72 of this court, which requires that a tender, to be of any avail, shall be deposited in court to abide its order or decree, was designed to adopt to that extent the common-law practice, instead of the looser practice countenanced to some extent in other courts of admiralty.   2 Pars. Shipp. & Adm. 484.   The libelant is therefore entitled to the sum deposited in court, for his principal, interest, and costs, less the costs of the claimant from the time of the tender.