## THE A. DENICKE.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1905.)

### No. 587.

SHIPPING—BREACH OF CHARTER TO CARRY LUMBER—MEASURE OF DAMAGES.

Libelants chartered space in a barge for the carriage of 250,000 feet of lumber from Norfolk to Baltimore, but the barge loaded only about 160,000 feet. Libelants had sold the lumber to be delivered in Baltimore, and by reason of their failure to make delivery were compelled to pay damages to the purchaser. The owners of the barge, however, had no knowledge of the sale. *Held,* that the amount so paid by libelants did not constitute the measure of damages recoverable by them for breach of the charter, since it could not have been in the contemplation of the parties when the charter was made, but that the measure of damages was the market value in Baltimore of the 90,000 feet of lumber not taken at the time it should have been delivered there, less its market value in Norfolk, with the freight charge added; and that, in the absence of evidence introduced by libelants from which such amount could be determined, only nominal damages were recoverable.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Admiralty.

R. M. Hughes, Jr. (Hughes & Little, on the brief), for appellant. J. D. Hank, Jr., and Thomas J. Randolph, for appellees.

Before GOFF and PRITCHARD, Circuit Judges.

GOFF, Circuit Judge. The court below rendered a decree in favor of the libelants in a suit in which a breach of contract of charter was charged. In November, 1903, W. J. Wilson, owner of the barge A. Denicke, chartered space therein to the libelants, M. McKann & Co., for the purpose of carrying 250,000 feet of lumber from Norfolk to Baltimore. Early in December following, the barge loaded, taking only 159,308 of the 250,000 feet contracted for with M. McKann & Co. The libelants charged, in substance, in the libel, that, because of the barge's failure to carry 90,692 feet of the lumber contracted for, the firm of M. McKann & Co. had been unable to comply with its contracts, and that damages had resulted because thereof. The case came on to be heard, when the decree referred to was entered by the court below, from which the appeal now under consideration was allowed.

It appears that in October, 1903, M. McKann & Co. had sold to Radicke & Lewis 250,000 feet of lumber, and to the Canton Box Company 125,000 feet, the delivery thereof to be made in Baltimore not later than in January, 1904. When the barge was being loaded, M. McKann & Co. advised the Canton Box Company by letter that their lumber was being shipped for delivery by the barge A. Denicke. After the barge had been loaded, and it was ascertained that only 159,308 feet had been taken on for M. McKann & Co., that firm then consigned the entire amount of said shipment to Radicke & Lewis as part of the 250,000 feet sold to them. The 90,692 feet of lumber owned by M. McKann & Co., and not loaded on the barge, was sold by that firm at Norfolk, before January 1, 1904. The barge left Norfolk on the 16th of December, 1903, and arrived at Baltimore two days thereafter. The Canton Box Company, not having received any of the lumber so contracted for, and not hearing from M. McKann & Co. concerning it, in April, 1904, made a demand on that firm for the difference in price between what they had agreed to pay for the lumber and the market price of lumber in Baltimore at the time of such demand. Certain negotiations were had, resulting in a compromise and an adjustment of the differences between the Canton Box Company and M. McKann & Co., and then followed the filing of the libel against the barge. So far as this record is concerned, no claim was made by Radicke & Lewis because of the balance of cargo due them. The appellant had no knowledge of the sales of lumber made by M. McKann & Co. to either Radicke & Lewis or to the Canton Box Company, nor was appellant informed concerning the terms of such sales; and therefore the parties could not, when making the contract, have contemplated any liability beyond that which would ordinarily arise from a breach of contract of such charter. If, under the circumstances disclosed by the record, the libelants were entitled to damages, such damages were of the character contemplated by the parties at the time of making the contract, or such as reasonably might have been expected to follow its breach. That the burden of proving such damages was on the libelants will not be controverted. So far as the barge was concerned, the damages incurred by it were fixed on the 18th day of December, 1903, when she reached the port of Baltimore carrying only 159,308 feet of the 250,000 feet of lumber contracted to be delivered. While M. McKann & Co. had sold the Canton Box Company 125,000 feet, the delivery of which could have been made at any time not later than in January, 1904, nevertheless the contract with the barge was limited to one voyage, and to 250,-000 feet of lumber, and the libelants' damages therefor related solely to the barge's failure to carry and deliver 90,692 feet of lumber, which should have been delivered at the end of the voyage before mentioned.

In this case, under the circumstances attending the transactions, including the contract of charter, the failure to carry the lumber referred to, and its subsequent sale, the measure of damages was the market value of the lumber at the port of Baltimore at the time

it was contracted to be delivered, less its value at Norfolk, where the barge agreed to receive it, and less also the freight agreed to be paid. What was the market price of such lumber at Baltimore on the 18th of December, 1903? On that point the testimony is unsatisfactory. What was the value of such lumber at Norfolk at the time when the barge should have received it under the contract for transportation to Baltimore? The record does not tell us clearly, although it appears that M. McKann & Co. sold it before January 1, 1904. The freight rate, as shown by the contract, was $1.35 per thousand. The amount of damages mentioned in the decree appealed from seems to have been based on the sum paid by the libelants in compromise of the claim submitted by the Canton Box Company, in connection with the damages alleged to have been caused by the nondelivery of the lumber purchased by that company. It does not follow that the liability of M. McKann & Co. to the Canton Box Company for the nondelivery of the lumber sold to it was the same as the liability of the barge to M. McKann & Co. for its failure to carry and deliver the lumber mentioned in the contract of charter. In connection with the propositions of law involved in this case, see Harvey v. Connecticut & Passumpsic Railroad, 124 Mass. 421, 26 Am. Rep. 673, and cases there cited; Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171; The Rossend Castle (D. C.) 30 Fed. 462; The Oregon, 55 Fed. 666, 5 C. C. A. 229.

There is no evidence in the record that M. McKann & Co. sold the lumber not taken by the barge for less than the market price at Norfolk, and it is a fair presumption that such price with the freight charge added, would at least have covered the amount at which the lumber was sold to the Canton Box Company in Baltimore, which, so far as this case is concerned, was the market value of such lumber at Baltimore at the time the barge contracted to deliver its cargo at that port. If the situation had been otherwise, the libelants should have shown it. In the absence of such testimony, the damages were, as we have seen, nominal.

The decree appealed from will be set aside, and this cause will be remanded to the court below, with directions to enter a decree for nominal damages.

Reversed.